IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GLORIA MEDINA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-1371-N |
| | § | |
| BRANDON VILLASANTI, | § | |
| | § | |
| Defendant. | § | |

# MEMORANDUM OPINION AND ORDER

This Order addresses Plaintiff Gloria Medina's petition for return of child under the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 24, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99–11 (the "Hague Convention") and the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001–11 ("ICARA"). For the reasons set forth below, the Court denies the petition.

## I. ORIGINS OF THE DISPUTE

This case concerns a dispute between a mother and a father over a child. Beginning around 2007, Medina and Brandon Villasanti dated and lived together in Dallas, Texas, United States. In September 2009, Medina gave birth to a child ("SBV") fathered by Villasanti. Eventually, Medina and Villasanti's relationship ended. Medina and SBV moved to San Luis Potosi, Mexico while Villasanti remained in Dallas. For several years, Villasanti would annually visit Medina and SBV in San Luis Potosi.

Regarding critical events during the summer of 2015, Medina's and Villasanti's stories diverge. Medina alleges that Villasanti requested Medina's permission to take SBV to the United States merely for a limited vacation. To memorialize this agreement, Villasanti sought Medina's signature on a contract written in English. But because Medina only understands Spanish, Villasanti orally translated the agreement to Spanish for her. Medina maintains that Villasanti's translation of the agreement matched his initial request: to take SBV to the United States for a brief vacation. Thus, Medina signed the agreement.

Villasanti disputes Medina's allegations, claiming instead that he clearly requested and received Medina's permission to take SBV to the United States indefinitely. In support, Villasanti produces the agreement at issue. Signed by Villasanti on July 31, 2015, notarized on the same day, and signed by Medina a day later, the agreement indicates that Medina grants permission for SBV to travel and live with Villasanti and that Medina trusts Villasanti to take care of SBV while she is living with him. Villasanti further claims that his translation of the agreement to Spanish accurately reflected its terms, including that it would allow him to retain SBV without any temporal limit. Based on the agreement, Villasanti took SBV to Dallas.

According to Medina, Villasanti began wrongfully retaining SBV in late August of 2015 when he did not return the child to Mexico. A few weeks after bringing SBV to the United States, Villasanti instead enrolled the child in school for the upcoming academic year. Around then, Villasanti apparently began ignoring Medina's telephone calls. Since then,

Medina has been unable to get in contact with Villasanti and SBV, now 8 years old, has not been returned to San Luis Potosi.[1]

As a result, Medina filed the instant petition for return of SBV. On May 29, 2018, the Court held a bench trial on Medina's petition. At trial, both Medina and Villasanti testified, the former via video conference from Mexico and the latter in person. In pertinent part, Villasanti testified that returning SBV to San Luis Potosi would expose the child to a grave risk of physical harm, given the violence that plagues the region and her malnourished and bug-bitten body while residing there. Upon considering the evidence produced at trial, the Court denies Medina's petition for the reasons set forth below.

## II. THE HAGUE CONVENTION AND ICARA

Medina's petition arises under the Hague Convention. The Hague Convention's purpose is "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention, art. 1. The United States is a Contracting State and Congress implemented its provisions through ICARA. *Abbott v. Abbott*, 560 U.S. 1, 5 (2010). ICARA establishes procedures for applying the Hague Convention in the courts of the United States, specifically assigning burdens of proof for proving a case for return of a child and for establishing affirmative defenses to return. *See* 22 U.S.C. § 9003. In addition, Congress made clear that

---

[1] The Court finds Villasanti to be the more credible witness and, in all cases where Medina's testimony conflicts with Villasanti's testimony, the Court accepts Villasanti's account.

the provisions in ICARA "are in addition to and not in lieu of" the Hague Convention. *Id.* § 9001(b)(2).

ICARA unequivocally limits the scope of United States courts to decide "rights under the Convention and not the merits of any underlying child custody claims." *Id.* § 9001(b)(4). The purpose of ICARA is to give courts the tools to implement the Hague Convention's primary goals of "restor[ing] the pre-abduction status quo and . . . deter[ring] parents from crossing borders in search of a more sympathetic court." *England v. England*, 234 F.3d 268, 271 (5th Cir. 2000) (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996)). "[A]ny debate on the merits of the question, i.e. of custody rights, should take place before the competent authorities in the State where the child had its habitual residence prior to its removal [or retention] . . . ." Elisa Pérez–Vera, Explanatory Report ¶ 19, in 4 Hague Conference on Private Int'l Law, Acts and Documents of the Fourteenth Session, Child Abduction 426, 430 (1982).

Procedurally, a petitioner seeking return of a child may file a petition in either federal or state court for a decision made "in accordance with the Convention." 22 U.S.C. § 9003(a), (b), (d). A court's jurisdiction is proper when the alleged wrongfully removed or retained child is physically located within the court's jurisdiction. *Id.* § 9003(b). The Hague Convention ceases to apply when the child attains the age of 16 years. Hague Convention, art. 4.

"The [Hague] Convention's central operating feature is the return remedy." *Abbott*, 560 U.S. at 9. A petitioner seeking the return of a child under ICARA has the burden of

proof to establish by a preponderance of the evidence that "the child has been wrongfully removed or retained within the meaning of the [Hague] Convention." 22 U.S.C. § 9003(e)(1). A parent wrongfully removes or retains a child under the Hague Convention "when he or she removes or retains the child outside of the child's country of habitual residence" and the removal or retention breaches the custody rights of the nonremoving parent under the laws of that country. *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 343 (5th Cir. 2004); Hague Convention, art. 3(a). Furthermore, the nonremoving or nonretaining parent must have been exercising those custody rights at the time of removal. *Sealed Appellant*, 394 F.3d at 343; Hague Convention, art. 3(b).

### III. THE COURT DENIES MEDINA'S PETITION

#### A. Medina's Petition Concerns Wrongful Retention, Not Wrongful Removal

Medina's petition does not clarify whether she seeks relief under the Hague Convention for wrongful removal or for wrongful retention. At times, the petition suggests one or the other as giving rise to her case. *Compare* Pet. 2 [1] ("The removal of the child from Mexico was wrongful . . . .") *with id.* ("At the time of the child's wrongful retention . . . ."). At other times, the petition suggests both may be appropriate. *See, e.g., id.* ("Removal and/or Retention of Child"). The Court must thus first determine which of the two options under the Hague Convention applies to the instant case.

Here, Medina's petition can only be construed as one for wrongful retention. Both parties agree that Medina gave Villasanti permission to take SBV to the United States. The only relevant point of contention is whether her grant of permission included a temporal

limitation or not. As a result, Villasanti's removal of SBV from Mexico was proper. This leaves whether or not Villasanti wrongfully retained SBV as the only open question. Medina's petition therefore concerns only wrongful retention, not wrongful removal.

### *B. Villasanti Has Not Wrongfully Retained SBV*

The threshold inquiry in any wrongful retention case is determining which country is the child's habitual residence. *See Larbie v. Larbie*, 690 F.3d 295, 310 (5th Cir. 2012) (citing *Mozes v. Mozes*, 239 F.3d 1067, 1072 (9th Cir. 2001)). The Hague Convention does not define the term "habitual residence." *Mozes*, 239 F.3d at 1071; *see* Hague Convention, arts. 1–45 (providing no definition for habitual residence). Similarly, ICARA does not provide guidance. *See* 22 U.S.C. §§ 9001–11 (same). Thus, courts have created various definitions and competing frameworks for deciding a child's country of habitual residence. *Compare Mozes*, 239 F.3d at 1076–81 *with Robert v. Tesson*, 507 F.3d 981, 989–95 (6th Cir. 2007). Recently, the Fifth Circuit adopted its framework for making country of habitual residence determinations. *Larbie*, 690 F.3d at 310. The inquiry balances the interests of the child with the intentions of the parents. *Id.* A court's "inquiry into a child's habitual residence is not formulaic; rather it is a fact-intensive determination that necessarily varies with the circumstances of each case." *Id.* (quoting *Whiting v. Krassner*, 391 F.3d 540, 546 (3d Cir. 2004)). When determining a child's country of habitual residence, analysis focuses on the "parents' shared intent or settled purpose regarding their child's residence." *Id.* (quoting *Nicolson v. Pappalardo*, 605 F.3d 100, 104 & n. 2 (1st Cir. 2010)). The inquiry balances the interest of the child with the parents' intentions, but gives greater weight to the parents'

subjective intentions when the child is relatively young and incapable of deciding residency. *Id.* (citing *Whiting*, 391 F.3d at 548–49). Absent shared intent, "prior habitual residence should be deemed supplanted only where 'the objective facts point unequivocally' to this conclusion." *Mozes*, 239 F.3d at 1082 (citation omitted). "Notably, when 'the child's initial move from an established habitual residence was clearly intended to be for a specific, limited duration[,] . . . most courts will find no change in habitual residence.'" *Larbie*, 690 F.3d at 311 (quoting *Whiting*, 391 F.3d at 549 (holding that a change in habitual residence had occurred because the parents had a written agreement that the child should reside in Canada, not New York, at the time the petition was filed)).

Here, the Court determines that SBV's habitual residence at all times relevant to Medina's petition has been the United States. Prior to August 2015, of course, SBV's habitual residence was Mexico: the fact that SBV resided there with Medina for several years with Villasanti making annual visits exhibits the parents' shared intent for the child to remain in Mexico. But, when Villasanti took SBV to the United States in August 2015, that changed. Although the parties dispute the length of time that Medina allowed Villasanti to take SBV to the United States, the Court credits Villasanti's testimony on this matter. Villasanti has produced the written agreement at issue, which does not include any temporal limit. Instead, the agreement allows Villasanti to retain SBV indefinitely, evidenced by its language allowing SBV to travel to the United States "to live with" Villasanti. Court's Ex. 1. As in *Whiting* – where a written agreement between the parents determined the child's habitual residence, 391 F.3d at 549 – so too here does the unlimited agreement between

Medina and Villasanti control. As a result, the parties evinced a shared intent in August 2015 to change SBV's habitual residence to United States. Thus, because SBV habitually resided in the United States at the time Medina filed the instant petition and Medina consented to SBV's residing there indefinitely, Villasanti has not wrongfully retained SBV.

### C. In Any Event, Villasanti Has Satisfied His Burden Under ICARA to Prevent SBV's Return to Mexico

Pursuant to ICARA, a respondent who opposes the return of a child has the burden of establishing (1) that one of the exceptions in articles 13(b) or 20 of the Hague Convention applies by clear and convincing evidence and (2) that any of the other exceptions in articles 12 or 13 of the Hague Convention applies by a preponderance of the evidence. 22 U.S.C. § 9003(e)(2). Article 13(b) of the Hague Convention provides that a court is not required to return a child if the respondent establishes that "there is a grave risk that [the child's] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention, art. 13(b). And article 13(a) of the Hague Convention allows the same if the respondent establishes, for example, that the other parent "consented to or subsequently acquiesced in the . . . retention." *Id.* 13(a).

Even assuming that Medina has made a prima facie case for wrongful retention, Villasanti has met his burden under ICARA to prevent SBV's return to Mexico. First, pursuant to article 13(b) of the Hague Convention, Villasanti has established by clear and convincing evidence that there is a grave risk that SBV's return to San Luis Potosi would expose her to physical harm. In support, Villasanti has produced photographs of SBV's arms taken mere months after her arrival in the United States in August 2015. The images

demonstrate that SBV was ravaged by bugs while residing in Mexico over the previous several years. *See* Court's Exs. 2–4. Further, Villasanti testified that pickup trucks full of civilians armed with automatic weapons openly drive on the public streets of Medina's village.[2] Villasanti also testified that SBV was malnourished when he picked her up in Mexico. The Court credits Villasanti's photographs and testimony as sufficiently establishing a grave risk of physical harm to SBV if returned to Mexico.

Second, pursuant to article 13(a) of the Hague Convention, Villasanti has established by a preponderance of the evidence that Medina consented to Villasanti's retention of SBV in the United States. As discussed previously, Medina granted Villasanti written permission to indefinitely retain SBV with him in Dallas. Although Medina testified that Villasanti did not accurately translate to her in Spanish the contents of the agreement written in English, the Court is unpersuaded by her testimony. Instead, the Court accepts Villasanti's testimony to the contrary. Villasanti has thus sufficiently established Medina's consent to Villasanti's retention of SBV.

Finally, even if Medina did not consent to the retention, SBV is settled in her new environment. Article 12 of the Hague Convention – which Villasanti may satisfy in lieu of article 13(a) to prevent SBV's return – includes two potentially pertinent clauses. The first provides that, where a child has been wrongfully retained and less than one year has elapsed between the date of the wrongful retention and the filing of the case for the child's return, the

---

[2] The Court does not rely on any perception of Mexico generally being unsafe, but rather on Villasanti's testimony regarding conditions in Medina's village specifically.

presiding court shall order the return of the child forthwith. Hague Convention, art. 12. The second provides that the presiding court shall also order the return of the child, even where more than one year has elapsed between the date of the wrongful retention and the filing of the case for the child's return, unless it is demonstrated that the child is now settled in her new environment. *Id.*

Here, only the second clause of article 12 applies because longer than a year elapsed from the date of the alleged wrongful retention and the filing of the instant case.[3] And Villasanti testified at trial that SBV (1) has been enrolled in school since her arrival in the United States, (2) lives in a home with Villasanti and her grandparents, and (3) repeatedly says she does not want to return to Mexico when asked. Collectively, this testimony establishes by a preponderance of the evidence that SBV is settled in her new environment. Thus, whether or not Villasanti has satisfied article 13(a) of the Hague Convention by demonstrating that Medina consented to his retention of SBV, he has satisfied article 12 by establishing that SBV is settled in her new environment. As a result, Villasanti has carried his burden under ICARA to prevent SBV's return to Mexico.

## Conclusion

Because SBV's habitual residence is the United States, Villasanti has not wrongfully retained the child. In any event, Villasanti has also satisfied his burden under ICARA to

---

[3] At trial, Medina indicated that Villasanti wrongfully retained SBV beginning in late August of 2015, when he decided to enroll the child in the upcoming school year a few weeks after bringing her to the United States. Medina, however, filed this petition on May 22, 2017, well over a year later.

prevent the child's return to Mexico. Therefore, the Court denies Medina's petition in full.

By separate document of this same date, the Court issues final judgment against Medina.

Signed June 19, 2018.

_____
David C. Godbey
United States District Judge